**J.G. WENTWORTH, Appellant,**

v.

**Sylvia JONES; Cynthia Jones; Brian Stanley; Odessa McCollum; Integrity Life Insurance Company; and National Integrity Life Insurance Company, Appellees.**

**No. 1998–CA–002237–MR.**

Court of Appeals of Kentucky.

April 14, 2000.

Rehearing Denied July 21, 2000.

Brent L. Caldwell, Stephen G. Amato, Lexington, KY, for Appellant.

William Jay Hunter, Jr., Thomas W. Frentz, Augustus S. Herbert, Terri E. Phelps Louisville, KY, for Appellees Integrity Life Insurance Company and National Integrity Life Insurance Company.

BEFORE: COMBS, EMBERTON, and GUIDUGLI, Judges.

## OPINION

COMBS, Judge:

J.G. Wentworth (a limited partnership) appeals an order of the Jefferson Circuit Court invalidating orders of garnishment that had been challenged by Integrity Life Insurance Company and National Integrity Life Insurance Company. The appellees were tort victims who had entered into structured settlement agreements with their respective tortfeasors; the appellee insurance companies issued annuities to fund those structured settlements. Appellant is in the business of purchasing from the tort victims their alleged right to receive monthly payments in exchange for a one-time lump-sum payment. The appellees rely on an anti-assignment provision in their original structured settlement agreement as a bar to the enforceability of

their assignments to Wentworth. We are asked to determine the validity of the assignments to Wentworth and consequently the enforceability of Wentworth's orders of garnishment to collect the payments.

## I. FACTUAL BACKGROUND

In the 1980's, Integrity Life Insurance Company and National Integrity Life Insurance Company (hereinafter "Integrity"), appellees, issued annuities to fund structured settlements entered into by four successful tort litigants: Odessa McCollum, Cynthia Jones, Sylvia Jones, and Brian Stanley. We shall review the specific facts of each transaction with the exception of that involving Brian Stanley, about whom no relevant information appears of record.

In January 1986, Odessa McCollum released her tort claims against the New Jersey Transit Corporation by entering into a structured settlement agreement. Pursuant to her release and settlement agreement, New Jersey Transit agreed to make to McCollum or to her estate payments of $54,090 within thirty days—plus monthly and other periodic lump-sum payments—until the year 2011. In order to fund these payments, New Jersey Transit agreed to purchase an annuity contract from Integrity. The terms of the settlement agreement permitted New Jersey to assign its obligation to make the periodic payments to Equitable Life Assurance Society of the United States ("Equitable"). Equitable was to be the sole owner of the annuity policy, to exercise all rights of ownership; McCollum was to have no legal interest, vested or contingent, in the contract as its owner.

Under the assignment agreement between and among New Jersey Transit, McCollum, and Equitable, the "payee" agreed not to "accelerate, defer, increase or decrease any payment." Equitable Assignment and Assumption Agreement at 2. The agreement provided that "[t]he Releasor (McCollum) further agrees that upon the mailing of a valid check to the Payee at

the address designated by the Releasor, the obligation to Equitable to make each payment when due shall be discharged to the extent of the amount of the check." *Id.* Further, the agreement provided that Equitable would "instruct the issuer of the Annuity to make the payments thereunder directly to the Payee [or the Payee's beneficiary] at the address provided in writing by Releasor." *Id.* The agreement was to bind New Jersey Transit, McCollum, Equitable, "and their respective personal representatives, heirs, successors, and assigns." *Id.*

The annuity policy was issued by Integrity on February 27, 1986, and McCollum was listed as the annuitant. While New Jersey Transit was listed as the owner of the annuity on the policy application, the contract indicated that its ownership would be assigned to Equitable. The policy is stamped "ASSIGNED."

Similarly, the administrator of the Estate of Johnnie Mae Jones released claims against the New York City Health and Hospitals Corporation and the City of New York by entering into a structured settlement agreement. Pursuant to the settlement agreement, the defendants (tortfeasors) agreed to pay to Sylvia and Cynthia Jones $10,000.00 each upon the signing of a court order—plus monthly payments for fifty years. To fund these payments, the defendants agreed to purchase an annuity contract from Integrity. Under the settlement agreement, the defendants were to be the sole owners of the annuity contracts. Further, the defendants were permitted to make a "qualified assignment" within the meaning of § 130(c) of the Internal Revenue Code of 1954, as amended; they accordingly assigned their obligation to make the periodic payments to Equitable.

Again, under the assignment agreement between and among the tortfeasors, the Jones Estate, and Equitable, the "payee" agreed not to "accelerate, defer, increase or decrease any payment." Equitable As-

signment and Assumption Agreement. The agreement provided that "[t]he Releasor (the Jones Estate) further agrees that upon the mailing of a valid check to the Payee at the address designated by the Releasor, the obligation to Equitable to make each payment when due shall be discharged to the extent of the amount of the check." *Id.* Further, the agreement provided that Equitable would "instruct the issuer of the Annuity [Integrity] to make the payments thereunder directly to the Payee [or the Payee's beneficiary] at the address provided in writing by Releasor." *Id.* The agreement was to bind the tortfeasors, the Jones Estate, Equitable, "and their respective personal representatives, heirs, successors, and assigns." *Id.*

The annuity policy appears to have been issued by Integrity on December 29, 1980. Zebedee Asa Jones, the administrator of the Jones Estate, was listed as the annuitant. The City of New York was listed as the owner of the annuity on the policy application, but the contract indicates that the policy was assigned. Cynthia Jones and Sylvia Jones were listed as additional payees.

In 1996, Wentworth sought to purchase the right to receive annuity payments from the annuitants. It made lump-sum payments to McCollum, to the Joneses, and to Stanley (whose case history was not in the record) in exchange for the right to receive the annuity payments to which they as payees were entitled under their respective settlement agreements.[1] As part of the separate purchase agreements with Wentworth, the individual payees agreed to direct Integrity to send those monthly payments to Wentworth. If the payees failed to direct the periodic payments to be mailed to Wentworth, their contracts provided that Wentworth could obtain confessed judgments against them for the periodic payments.

When the payees failed to honor their agreements with it, Wentworth obtained *cognovit* judgments in Pennsylvania against each of the payees. The judgments were registered in Kentucky, and Wentworth sought to enforce them by causing non-wage garnishments to be issued against Integrity. Integrity resisted the garnishments on a variety of grounds. After the cases were consolidated, the trial court upheld Integrity's objections to the garnishments.

The trial court concluded that each of the payees did have a legal interest in the respective annuity contracts and that Integrity was under a continuing obligation to provide the periodic payments. However, the trial court held that the purchase agreement between Wentworth and the payees did *not* constitute a valid legal assignment. It determined that Equitable, as the *owner of the annuities,* was the *only* party entitled or empowered to assign or re-direct the payments. Additionally, the trial court ruled that the attempted garnishments did not comport with Kentucky's statutes or public policy. The court reasoned that the garnishments were not served during the brief period between the time that the monthly obligation ripened and the time when the monthly payment was mailed to the payee; in other words, the judgment debtor's property was not properly attached while in the possession of the garnishee. Finally, the court determined that the proceeds of the annuities were exempt from garnishment and that Integrity did have standing to raise this issue. This appeal by Wentworth followed.

## II. DISCUSSION

Wentworth argues that the trial court erred by concluding that the annuitant-payees were unable to sell or assign their rights to receive periodic payments under

---

1. Transfers of structured settlement payment rights are now governed by KRS 454.430–435. Among other requirements, this provision mandates a detailed disclosure statement explaining the transaction and advanced court approval of the transfer. This provision became effective July 15, 1998, subsequent to events giving rise to this action.

the structured settlements. While it agrees with the trial court's conclusion that only Equitable, as owner of the annuity contract, could assign or otherwise affect Integrity's obligation to make the annuity payments, Wentworth emphasizes that the individual payees could and did effectively assign their *rights to receive* those payments. Integrity counters that the payees are not parties to the annuity contracts and that by virtue of the settlement agreements, they do not actually possess the right to receive the annuity payments. As a result, it contends, the payees cannot assign or pledge the right to receive the stream of payments to anyone—including Wentworth.

■ In general, a contractual right to receive a future stream of payments is assignable. E. Allan Farnsworth, *Farnsworth on Contracts* § 11.2 (1990). Kentucky law expressly provides that an annuity contract "may be assignable or not assignable, as provided by its terms." KRS 304.14–250(1). However, we find the annuity contracts involved in this case to be of a unique character and, therefore, distinguishable from all other species of contracts—especially with respect to the issue of assignability. We are persuaded that the attempt by Wentworth to enforce its putative assignments from these tort victims must fail based on our analysis of pertinent provisions of the Internal Revenue Code, Kentucky garnishment statutes, the Kentucky Insurance Code, and public policy considerations.

■ These settlement agreements were carefully crafted in contemplation of the strict provisions of the Internal Revenue Code (26 U.S.C. § 104(a)(2) 130 (1988 & Supp.1999)) providing tax concessions to encourage such settlements between tort victims and tortfeasors. Underlying these "tax breaks" is the public policy purpose of providing income over the long term for an impaired class of citizens who would otherwise be in grave danger of indigency. The stability of their long-term financial security is assured by such agreements and,

therefore, that very interest in stability serves as the motivator for the special tax considerations. *Grieve v. General American Life Insurance Company*, 58 F.Supp.2d 319 (D.Vt.1999). A transfer or assignment of the character of Wentworth's was never contemplated nor authorized by the Internal Revenue Code and thus involves serious pre-emption implications.

Pursuant to 26 U.S.C. § 130(c)(2)(B), the payees had agreed not to "accelerate, defer, increase or decrease any payment. . . ." In order that the payments not be treated as taxable income, the payees' only possessory interest in the proceeds had to consist of *periodic* payments as opposed to any other form of receipt—thus assuring a continuing cushion of income to prevent "binging away" of an asset that would effectively render tort victims indigent. In consideration for the ability to guarantee adequate income for this protected class of beneficiaries, the Internal Revenue Code provided for one qualified assignment of liability for making the periodic payments to a qualified assignee (Equitable).

■ In the settlement agreements, Equitable as assignee agreed to purchase an annuity contract from Integrity and to assume thereby all obligation for payment of proceeds to the plaintiff-payees. The McCollum agreement at page 4 specifically stated (in keeping with the dictates of Section 130 of the Internal Revenue Code): "Plaintiff shall have *no legal interest*, vested or contingent, in such annuity contract *as owner*." (Emphasis added.) Further reinforcing the absence of ownership in the payees, the annuity contracts restricted the *right of assignment to Equitable alone*. Appellees argue that so complete were Equitable's ownership rights that even the right to receive payments "shall rest and remain solely in Equitable. . . ." (McCollum agreement, page 2, paragraph 2). Thus, although Equitable clearly owed a *duty* to the obligor-tortfeasors to *make*

*payments* to the tort victim-payees, the right to receive payments flowed from Integrity to Equitable, rendering the payees incidental third-party beneficiaries who retained none of the incidents or accouterments of ownership in the annuities.

Appellees contend that since they had absolutely no ownership interest in the annuity contracts, they had no interest susceptible of assignment. We agree. The interest obtained by Wentworth by its attempted assignment agreements with these payees was wholly illusory. *Allstate Insurance Company v. American Bankers Insurance Company of Florida,* 882 F.2d 856, 860 (4 th Cir.1989). Furthermore, they argue that Equitable alone had the exclusive right to assign these agreements. We are persuaded that they are correct both as to the terms of the agreements themselves and as to the restrictions imposed by Section 130 of the Internal Revenue Code stripping the plaintiff-payees of all legal interest in the annuity contracts. We are without jurisdiction to tamper with Internal Revenue Code restrictions that form the basis or genesis for the tax concessions built into these agreements.

A distinct but related argument is that even if the annuity contracts were subject to assignment, the proceeds paid to these annuitants would be exempt under the Kentucky statutory law on garnishment. KRS 425.501 provides:

> (1) Any person in whose favor a final judgment in personam has been entered ... may ... obtain an order of garnishment to be served in accordance with the Rules of Civil Procedure.
>
> ....
>
> (5) If the court finds that the garnishee was, at the time of service of the order upon him, *possessed of any property of the judgment debtor, or was indebted to him, and the property or debt is not exempt from execution,* the court shall order the property or the proceeds of the debt applied upon the judgment. (Emphasis added.)

Appellees argue that the annuity payments at issue defy garnishment because of their exempt status. They maintain, however, that even if they were not exempt, a separate order of garnishment would have to issue at precisely the fleeting moment when the check went out in the mail from Integrity to the payees. Appellant disagrees, contending that these assets are not exempt and that they are furthermore subject to a continuing order of garnishment as opposed to the opinion of the circuit court that a separate garnishment must issue for each separate payment:

> Integrity argues that even if it owes an obligation to the settling plaintiffs, its indebtedness arises when the payment is due and is discharged when the check goes in the mail. Therefore, the garnishments can only be valid if served during this brief window of time. Integrity is correct.
>
> However, under the present state of the record, there is no proof any of the garnishments arrived during this brief interval.

Opinion and Order of Judge John W. Potter, Jefferson Circuit Court, July 20, 1998, pp. 4–5.

We need not reach the issue of separate orders of garnishment, however, until we first determine the threshold issue of the exempt status of the annuity proceeds. If the assets are not exempt from garnishment, the form of the garnishment has relevance; if they are exempt, the point is moot.

■ We agree with the finding of the trial court that the annuitants' payments are exempt from garnishment pursuant to the Kentucky Insurance Code (KRS Chapter 304). Specifically, KRS 304.14–330 addresses this issue as follows:

**Exemption of proceeds, annuity contracts—Assignability of rights.**

(1) The benefits, rights, privileges and options which under *any annuity contract* heretofore or hereafter issued are

due or prospectively due the annuitant, *shall not be subject to execution* nor shall the annuitant be compelled to exercise any such rights, powers, or options, nor shall creditors be allowed to interfere with or terminate the contract, except:

. . . .

(b) The *total exemption* of benefits presently due and payable to any annuitant periodically or at stated times under all annuity contracts under which he is an annuitant, *shall not at any time exceed $350 per month* for the length of time represented by such installments, and that such periodic payments in excess of $350 per month shall be subject to garnishee execution to the same extent as are wages and salaries.

(c) If the total benefits presently due and payable to any annuitant under all annuity contracts under which he is an annuitant, *shall at any time exceed payment at the rate of $350 per month, then the court may order such annuitant to pay to a judgment creditor* or apply on the judgment, in installments, such portion of such excess benefits *as to the court may appear just and proper, after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him,* as well as any payments required to be made by the annuitant to other creditors under prior court orders.

(2) If the contract so provides, the *benefits, rights, privileges or options accruing under such contract to a beneficiary or assignee shall not be transferable nor subject to commutation,* and if the benefits are payable periodically or at stated times, the same exemptions and exceptions contained herein for the annuitant, shall apply with respect to such beneficiary or assignee. (Emphasis added).

The statute unequivocally exempts $350 per month from collection; it then leaves any sum in excess of that $350 ceiling to the *discretion of the trial court* as to the availability for garnishment. The trial court in this case had the best opportunity to review the evidence and to analyze the Draconian and clandestine methods employed by Wentworth to prey upon this vulnerable group of annuitants. It was in the best position to evaluate that record, and we believe that the court reasoned correctly that Wentworth was not entitled to collect *any* of the discretionary amount exceeding the $350–exempted proceeds.

■ Finally, in addition to the statutory provisions rendering these payments nonassignable and exempt from garnishment with respect to these appellees[2], we are mindful of the public purpose and philosophy underlying the law of structured settlements: to protect a class of injured plaintiffs beyond the moment of trial and the award of damages by extending that monetary umbrella over the span of their lives far into the future. Thus is the very analysis in which the trial court correctly engaged in arriving at its decision not to allow any funds exceeding $350 to be attached, not to allow Wentworth "to accomplish by sleight of hand" what the law forbids otherwise.

■ The last argument raised by appellant urges us to conclude that Integrity as garnishee had no standing to assert that the proceeds destined to Wentworth's judgment debtors was exempt from execution. Wentworth relies on *Central Supply of Virginia, Inc. v. Commonwealth Life Insurance Co.,* Ky.App., 787 S.W.2d 273 (1990), where this Court re-affirmed that an exemption may be claimed only by the debtor and not by another for his benefit. We find that case to be distinguishable, however, as a single payment of life insur-

---

2. As noted earlier in this opinion, effective as of July 15, 1998, the Kentucky General Assembly enacted specific statutes at KRS 454.430–435 governing transfers of such payments. These statutes, however, while an interesting commentary on general public policy considerations inherent in this controversy, do not determine this case as these assignments arose before passage of that legislation.

ance cash surrender proceeds was at issue whereas in the present case Integrity was directly besieged by an ongoing barrage of continuing garnishments. Integrity indeed had an immediate and possibly long-term prospect of responding to a series of garnishments over time with exposure to liability on multiple occasions for wrongful payment. As such, we find that Integrity indeed faced a justiciable controversy that conferred standing upon it.

We therefore affirm the order of the Jefferson Circuit Court.

ALL CONCUR.