S01G1611. SINGER ASSET FINANCE COMPANY et al. v. CGU LIFE INSURANCE COMPANY OF AMERICA et al.
(567 SE2d 9)

THOMPSON, Justice.

We granted a writ of certiorari in *CGU Life Ins. Co. v. Singer Asset Finance Co.,* 250 Ga. App. 516 (553 SE2d 8) (2001), a case of first impression, to determine whether a tax-preferred structured settlement agreement can preclude the assignment of future payments. The answer in this case is "yes."

CGU Life Insurance Company of America entered into structured settlement agreements with Christopher and Jonathan Revill. Pursuant to the agreements, CGU was to make future periodic payments, in addition to an initial lump-sum payment, to each Revill brother. The agreements contain a clause which states that future payments could not be "accelerated, deferred, increased or decreased . . . nor shall [the Revill brothers] have the power to sell or mortgage or encumber same, or any part thereof, by assignment or otherwise."

The agreements also provided that CGU could make a "qualified assignment" of its obligation to make future payments within the meaning of Section 130 (c) of the Internal Revenue Code. Pursuant to that provision, CGU assigned its liability for all future payments to CGU Annuity Service Corporation, and that entity purchased an annuity to fund the periodic payments.

---

[6] See *Strickland v. Washington,* 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

Thereafter, in exchange for a lump sum payment, the Revill brothers assigned their right to receive some of their future payments to Singer Asset Finance Company. When CGU learned of that transaction, it brought suit against Singer and the Revill brothers to have the assignment of future payments declared unenforceable; Singer and the Revills counterclaimed seeking a declaration that the assignment was valid.

On cross-motions for summary judgment, the trial court upheld the validity of the assignment. The Court of Appeals reversed, holding that the structured settlement agreement precluded the assignment of future payments by the Revills to Singer. We granted a writ of certiorari to review the opinion of the Court of Appeals. We conclude that the Court of Appeals was correct in that the non-assignment language of the structured settlement agreement prohibits the assignment of future payments by the Revills. Accordingly, we affirm.

1. In *Mail Concepts v. Foote & Davies*, 200 Ga. App. 778 (409 SE2d 567) (1991), the Court of Appeals held that a non-assignment clause in a contract for services and labor was unenforceable. In so holding, the court observed that, with the exception of contracts requiring peculiar skills or services which are inherently not assignable:

> once a party to the contract performs its obligations thereunder so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent even if the contract contains a non-assignment clause.

Id. at 781.

Relying upon *Mail Concepts*, Singer asserts that the non-assignment provision in this case is unenforceable. We disagree because, unlike the assignment in *Mail Concepts*, the assignment in this case will materially reduce the value of the contract. See *Grieve v. Gen. American Life Ins. Co.*, 58 FSupp2d 319, 322 (D.Vt. 1999). By this we mean that, although contracts are generally assignable in this state even when they contain a non-assignment clause, *Mail Concepts*, supra, they should not be assigned when that clause was inserted to protect a party from a material reduction in the value of the contract.[1] See Restatement, Second, Contracts, § 317 (2) (a).

---

[1] We see this notion in *Mail Concepts*, supra at 781. There the court recognized that a contract requiring the performance of peculiar skills cannot be assigned. Although it was not explicitly said, the obvious basis for that exception is that the assignment of such a contract can materially affect its value.

Here, as we shall see, the non-assignment clause was contained in a structured settlement agreement, and the assignment of future payments under that agreement would materially reduce its value to CGU.

2. A structured settlement is

a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. § 104 (a) (2) (providing that the amount of any damages received on account of personal injuries or sickness are excludable from income). However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income. Accordingly, a structured settlement effectively shelters from taxation the returns from the investment of the lump-sum payment.

*Western United Life Assurance Co. v. Hayden*, 64 F3d 833, 839 (3rd Cir. 1995). Because of these tax advantages, a plaintiff will often opt for a structured settlement agreement, in lieu of a lump-sum payment. If a plaintiff takes that option, the defendant has an interest in insuring that the structured settlement agreement comports with the tax code. That is because, when a defendant, or an insurer, makes a qualified assignment of its obligation to make periodic payments, the qualified assignee — in this case, CGU — can exclude the qualified funding asset[2] from its gross income. Thus, a structured settlement is "a tax neutral transaction in which the settling defendant assigns and a third party assumes the obligation to make periodic payments." Id. at 840. And such a transaction is permitted *unless* the periodic payments are "accelerated, deferred, increased, or decreased by the recipient." 26 USC § 130 (c) (2).

3. Did the assignment of some of the future payments to Singer run afoul of 26 USC § 130 (c) (2)? Singer argues that its purchase of the future payments did not constitute an acceleration or deferment of the periodic payments by the Revills, and that, therefore, it cannot be said that CGU will suffer adverse tax consequences. This argument misses the mark. The loss of predictability stemming from the

---

[2] Usually, as in this case, a qualified funding asset takes the form of an annuity contract.

fact that CGU *might* suffer adverse tax consequences is a material increase in the burden on CGU and sufficient reason to preclude the assignment. *Liberty Life Assurance Co. v. Stone Street Capital*, 93 FSupp.2d 630, 636 (D. Md. 2000).

Besides, an assignment of the structured settlement agreement may increase the burden on CGU in other ways. As the court noted in *Stone Street Capital*, when a structured settlement agreement is assigned, the obligor is "no longer able to predict the . . . accounting implications, administrative costs, and risk of exposure to competing claims to future settlement payments." Id. at 634. Thus, the non-assignment provision protects the obligor over the life of the structured settlement agreement and should be enforced.

Seemingly, the Victims of Terrorism Relief Act of 2001, Pub. L. No. 107-134, 115 Stat. 2427 (now IRC § 5891), will eliminate an obligor's concerns about potential tax liability when an obligee attempts to assign a structured settlement agreement.[3] Whatever effect this change may have on future assignments, it plays no role in this case because, as noted above, the assignment of a structured settlement agreement exposes the obligor to potential litigation and administrative risks.

4. In passing, we observe that our holding is consistent with many jurisdictions which have considered this issue.[4] We find these cases to be persuasive, and see no reason to depart from the general rule which they have established.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 15, 2002.

*Duane Morris, LLP, Joseph S. Carr, Catrina C. Creswell*, for appellants.

*Nall, Miller, Owens, Hocutt & Howard, Michael D. Hostetter*, for appellees.

*Hays & Potter, James W. Hays, Stephen A. Kirkwood*, amici curiae.

---

[3] The Act does, however, impose a significant tax on the assignee for transactions of this kind.

[4] See *CGU Life Ins. Co. v. Metropolitan Mortgage & Securities Co.*, 131 FSupp.2d 670 (E.D. Pa. 2001); *Liberty Life Assur. Co. v. Stone Street Capital*, supra; *Grieve v. General American Life Ins. Co.*, supra; *Johnson v. First Colony Life Ins. Co.*, 26 FSupp.2d 1227 (C.D. Cal. 1998); *Piasecki v. Liberty Life Assur. Co. of Boston*, 728 NE2d 71 (Ill. App. 2000).