*221 OPINION OF THE COURT
Jane S. Solomon, J.
This decision on the petition by R&P Capital Resources, Inc. and Jerry L. Hildreth, Sr. for approval of a transfer of structured settlement payments addresses a significant issue of first impression regarding the extent of this court’s jurisdiction under the New York Structured Settlement Protection Act (SSPA) (General Obligations Law § 5-1701 et seq.). Notwithstanding the fact that petitioners failed to respond to an order to show cause why the petition should not be denied, this decision is issued.
Background
Earlier this year, the Chief Administrative Judge of this court directed that SSPA proceedings commenced in New York County be assigned to the author. The SSPA was enacted last year, with an effective date of July 1, 2002. A steady stream of petitions are presented, and it is fair to say that both counsel and the court are learning how best to apply the statute. This decision is offered to advance that process.
Structured Settlement Sales
Personal injury litigation sometimes concludes with the plaintiff becoming entitled to a stream of future payments. This resolution is known as a structured settlement. The payment period can be over many years; 10 to 25 years is not uncommon, and the payments may be a regular monthly amount, lump-sum payments every fixed number of years, or another agreed program. The payments usually are funded through an annuity contract with an insurance company. In addition to providing the payee with a secure source of income, structured settlements provide insurance carriers with a less expensive means of settling a personal injury claim because it allows them to pay the obligation over many years, and they may qualify for favorable tax treatment. (See, Internal Revenue Code [26 USC] § 130.) The annuity contract typically contains a provision prohibiting a payee from assigning or otherwise transferring the payments.
Structured settlement payees sometimes find that their financial needs or desires are inconsistent with the long payout period. Finance companies exploit the opportunity presented by impatient payees with offers to purchase the payment streams. These purchases, in essence, are factoring transactions, with *222 the future payments being “sold” to the finance companies for discounted lump sums. The discount rate can be quite steep, usually between 18 and 25% which results in a relatively small payment to the payee and a large profit for the finance company. Understandably, such transactions are sensible for some payees in some circumstances.
However, perhaps because the payees frequently are unsophisticated and there is concern that finance companies take advantage of this lack of sophistication with offers of immediate cash, these purchases have not been looked upon favorably by courts or legislatures. In particular, courts have refused to approve factoring transactions where the annuity contract contains a nonassignment clause.[1]
The SSPA and Federal Law
Acknowledging that these transactions have been entered into historically, whether or not the transactions were lawful, or permitted under the annuity contracts, the New York State Legislature passed the SSPA. It is intended to protect recipients of structured settlements, and to maintain the integrity of structured settlements for use in settling personal injury lawsuits. (See, Assembly Mem in Support, Bill Jacket, L 2002, ch 537.) It permits a payee to transfer his or her payments, subject to certain restrictions, even if the transfer is not permitted under the annuity contract.
State court approval of these transactions is encouraged under Internal Revenue Code (26 USC) § 5891 (IRC § 5891). That statute, enacted also in 2002, imposes a 40% tax on the factoring discount derived from structured settlement transactions, unless the transaction is made pursuant to a qualified order. (IRC § 5891 [a], [b] [1].) A qualified order means a final order, judgment or decree issued by a state court that finds that the transaction does not contravene any state or federal statute or order of a court or administrative agency; is in the best interest of the payee, taking into account the welfare and support of the payee’s dependents (IRC § 5891 [b] [2] [A]); and is issued under the authority of an applicable state statute by an applicable *223 state court (IRC § 5891 [b] [2] [B]). Applicable state statute is defined in IRC § 5891 as follows:
“(3) Applicable State Statute. — For purposes of this section, the term ‘applicable State statute’ means a statute providing for the entry of an order, judgment, or decree described in paragraph (2) (A) which is enacted by—
“(A) the State in which the payee of the structured settlement is domiciled, or
“(B) if there is no statute described in subparagraph (A), the State in which either the party to the structured settlement (including an assignee under a qualified assignment under section 130) or the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business.”
New York’s SSPA is an applicable state statute under IRC § 5891. It provides that
“(a) An action for approval of a transfer of a structured settlement shall be by a special proceeding.
“(b) Such proceeding shall be commenced to obtain approval of a transfer of structured settlement payment rights. Such proceeding shall be commenced:
“(i) in the supreme court of the county in which the payee resides; or
“(ii) in any court which approved the structured settlement agreement.” (General Obligations Law § 5-1705.)
Notably, there is no provision for entertaining applications based upon the domicile in New York of either a party to the structured settlement or the person issuing the annuity, if the transferor-payee is neither a New York resident nor settled his or her claim in a New York court.
In the present proceeding, petitioner Jerry L. Hildreth, Sr. lives in Alabama.[2] He settled a personal injury action with a structured settlement in an Alabama state court. The annuity *224 issuer for the structured settlement is Metropolitan Life Insurance Company (MetLife), which is said to have its principal place of business in New York. The structured settlement obligor (see, General Obligations Law § 5-1701 [n]) and issuer of the funding asset for the structured settlement (see, IRC § 5891 [b] [3] [B]) is Metropolitan Insurance and Annuity Company (MIAC), which also is said to have its principal place of business in New York. Petitioner R&P Capital Resources, Inc. is a finance company with a White Plains, New York, address that has offered to purchase Mr. Hildreth’s periodic payments. Petitioners claim that they have come to this court because Alabama does not have an applicable state statute under IRC § 5891, so they are seeking approval in New York pursuant to IRC § 5891 (b) (3) (B) because MetLife and MIAC have their principal places of business here.
Although IRC § 5891 (b) (3) contemplates that approval may be sought in the state where the parties to the annuity contract are domiciled or have their principal place of business, such approval must be pursuant to the state statute. New York’s statute does not extend this court’s jurisdiction to those circumstances. Under the maxim of legislative interpretation that when a broader grant of authority is available but only a limited one is articulated, the limited must be applied, the Legislature did not grant jurisdiction to this court to entertain Mr. Hildreth’s petition.
New York’s Legislature enacted the SSPA after the federal statute. Its members may have been aware of the broader application suggested under IRC § 5891 (b) (3), and that many insurance and financial institutions are located here. However, the Legislature did not elect to open New York courts to every person in a state that has yet to enact an applicable statute under IRC § 5891, but whose annuity is issued by a New York institution. The refusal to do so is sensible. In order to satisfy the court’s obligation under both statutes to make inquiry of the propriety of the transaction for the individual consumer petitioner, a personal appearance necessarily is required. (See, IRC § 5891 [b] [2] [A] [i], [ii]; General Obligations Law § 5-1706 [b].) The court must make a sober determination with respect to the payee’s best interests (see, Matter of Settlement Funding of NY., 195 Misc 2d 721 [Sup Ct, Rensselaer County 2003]), a task that does not lend itself to long-distance litigation. And to make New York courts a nationwide clearinghouse for the *225 protection of payee-consumers is an unwarranted burden on court and consumer alike.
Under the circumstances, it hereby is ordered and adjudged that the petition is denied, and the proceeding is dismissed.

. Examples of decisions enforcing the antiassignment clauses in annuity contracts include: C. U Annuity Serv. Corp. v Young (281 AD2d 292 [1st Dept 2001] ), Green v Safeco Life Ins. Co. (312 Ill App 3d 577, 727 NE2d 393 [2000]), Liberty Life Assur. Co. of Boston v Stone St. Capital, Inc. (93 F Supp 2d 630 [D Md 2000]), and Singer Asset Fin. Co. v Backus (294 AD2d 818 [4th Dept 2002] ).

. This is not petitioners’ first application. Without addressing the instant issue, I signed an earlier order to show cause to approve the transfer but later denied it when petitioners willfully dishonored the service provision, granting leave to renew. When the instant application was presented, I edited the proposed text so as to direct petitioners to show cause why the petition should not be denied for want of jurisdiction. No response, and no evidence of service, was submitted.