In re Tina Nichole GALLAGHER,
Debtor.

Singer Asset Finance Co.,
LLC, Appellant,

v.

Tina Nichole Gallagher, Appellee.

BAP No. WW–04–1374–STP.
Bankruptcy No. 03–16606.
Adversary No. 04–01164.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 25, 2005.

Filed Sept. 30, 2005.

those matters as this proceeding continues before it.

Christopher H. Howard, Holland & Knight LLP, Seattle, WA, for Singer Asset Finance Co., LLC.

Mary E. Schmitt, Everett, WA, for Tina Nichole Gallagher.

Before: SMITH, TIGHE [1], and PERRIS, Bankruptcy Judges.

## OPINION

SMITH, Bankruptcy Judge.

This appeal is from a final order denying Appellant Singer Asset Finance Co.'s ("Singer") motion for summary judgment and granting summary judgment in favor of the debtor, Tina Nichole Gallagher ("Debtor" or "Gallagher"). We AFFIRM.

## FACTS

The relevant facts are not in dispute. On May 20, 1988, a California court entered an Order Approving Compromise of Minor's Claim on behalf of Tina Christianson, now Tina Gallagher. The order incorporated a settlement agreement reached between Allstate Insurance Company ("Allstate") and Bonnie Christianson, as *guardian ad litem* for Gallagher following an accident that caused the death of her father. The agreement was a structured settlement providing monthly payments to Gallagher of $923.53 from June 9, 1995 through May 9, 2025, as well as three lump sum payments of $10,000 on June 9, 1995, $15,000 on June 9, 1998, and $25,000 on June 9, 2005. Allstate funded its periodic payment obligation by purchasing an annuity contract from Allstate Life Insurance Company ("Allstate Life") which provided for the monthly annuity payments to be sent directly to Gallagher. The settlement agreement includes a non-assignment clause which states

> [A]ll settlement funds shall be free from anticipation, assignment, pledge or

1. Hon. Maureen A. Tighe, U.S. Bankruptcy Judge for the Central District of California, sitting by designation.

obligations of the claimant, his heirs, executors, administrators, successors or assignees, and shall not be subject to attachment, exclusion or other legal process.

Despite the non-assignment clause, in June 2000, Gallagher entered into a loan agreement with Merrick Bank Corporation ("Merrick"), in which she borrowed $64,969 and assigned her right to receive the monthly payments under the settlement agreement for a period of 120 months plus one lump sum payment of $25,000 payable June 9, 2005, totaling $135,823.[2] This equates to an effective interest rate of 15% per annum. Merrick subsequently assigned its interest in the loan agreement to Singer, who promptly filed a financing statement pursuant to the Uniform Commercial Code.

Gallagher performed under the loan agreement for almost two and a half years before defaulting. On May 20, 2003, she filed a chapter 13[3] bankruptcy petition. Singer timely filed a proof of claim in the amount of $98,495.33, asserting a security interest in the annuity payments. Allstate

Life and Allstate Settlement Corporation thereafter filed an interpleader action and began depositing the monthly annuity payments with the clerk of the U.S. Bankruptcy Court.

On March 30, 2004, Gallagher commenced an adversary proceeding to avoid Singer's security interest. Singer moved for summary judgment on the ground that under Article 9 of the Uniform Commercial Code, it held a perfected security interest in and to Gallagher's periodic payments under the settlement agreement which could not be defeated by the non-assignment clause. In opposition, Gallagher contended that Article 9 does not apply to the transfer of an interest in a policy of insurance or arising out of a tort. Furthermore, Gallagher argued, Article 9 does not apply to structured settlements which contain a non-assignment clause.

■ The court granted summary judgment in favor of Gallagher, holding that the transaction was not governed by Article 9 because, pursuant to UCC § 9–104(k), the claim arose out of a tort.[4]

2. Gallagher also executed a special irrevocable durable power of attorney along with an instruction that upon her death, Singer would be "entitled to the proceeds of each of the payments under the Settlement Agreement and or the Annuity and all other benefits regarding the Collateral" (without any language limiting Singer's rights to those proceeds assigned under the Loan Agreement).

3. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

4. According to Singer, the court erred in granting summary judgment in favor of Gallagher, the non-moving party, because her opposition stated no basis for dispositive relief, was not supported by any declaration or affidavit, did not include a motion for summary judgment, and did not provide Singer an opportunity for opposition briefing.

In her opposition papers, however, Gallagher did seek summary judgment, in the alternative. The record indicates the parties had every opportunity to expound on the issues inherent in the prayer for relief and did so to the extent they deemed advisable. There is no predicate in the record for Singer's claim of unfairness. See Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir.1982).

Furthermore, Singer is certainly no stranger to matters relating to the enforceability of anti-assignment clauses in structured settlement agreements, having actively litigated the issue, often without success, all over the country. See Singer Asset Finance Co. v. Continental Casualty Co., 886 So.2d 1004 (Fla.Dist.Ct. App.2004) (applying Texas law and finding the non-assignment provision of the settlement agreement to be valid); Singer Asset Finance Co. v. Michelle L. Duboff (In re Duboff), 290 B.R. 652 (Bankr.C.D.Ill.2003) (applying Illinois lottery law preventing assignment of prizes and rejecting Singer's claim

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2). This Panel has jurisdiction under 28 U.S.C. § 158(b)(1).[5]

## ISSUE

Whether Singer's claim is one arising in tort, rendering it exempt from coverage under Article 9.

## STANDARD OF REVIEW

The Panel reviews summary judgment orders de novo. *In re Paine*, 283 B.R. 33, 36 (9th Cir. BAP 2002).

## DISCUSSION

A. *Applicability of Article 9 to Assignment of Rights Under Structured Settlements.*

■ Preliminarily, we hold that, contrary to the bankruptcy court's determination, Revised Article 9 of the UCC, rather than the former Article 9, is applicable here. *See In re Wiersma*, 283 B.R. 294, 299 (Bankr.D.Idaho 2002)(and cases cited therein). Washington state's version of Revised Article 9, codified in RCWA § 62A.9A, became effective July 1, 2001,[6] prior to the commencement of Gallagher's bankruptcy case. Under these circumstances, many courts have applied the revised version, even though events relevant to the dispute may have occurred prior to the effective date. *See Wiersma*, 283 B.R. at 299.

The relevant section under the former Article 9, UCC § 9–104(k)(1998), was recodified in Revised Article 9 as UCC § 9–109(d)(12) and adopted and codified in Washington as RCWA § 62A.9A–109(d)(12). Revised Article 9 will hereafter be referred to as "Article 9". Our determination that the bankruptcy court incorrectly applied the former version of Article 9 does not, however, affect the soundness of the court's ruling because the provisions relevant to its analysis remain substantially unchanged.

Article 9 governs secured transactions, including a secured creditor's right to payment. However, the applicability of Article 9 to the assignment of payment rights under a structured settlement agreement is not entirely clear. Courts are split on the effectiveness of such assignments where an explicit non-assignment clause is present in the underlying agreement. To be sure, the issue has been litigated in a number of jurisdictions, both state and federal, with varying results.[7]

---

that the non-assignment provision in the statute is invalid against Singer's Article 9 secured interest); *Singer Asset Finance Co. v. CGU Life Ins. Co.*, 275 Ga. 328, 567 S.E.2d 9 (July 15, 2002) (non-assignment clause contained in structured settlement is valid and enforceable); *Singer Asset Finance Co. v. Bachus*, 294 A.D.2d 818, 741 N.Y.S.2d 618 (N.Y.App.Div.2002) (non-assignment clause contained in structured settlement is valid and enforceable).

5. No separate, final judgment disposing of the adversary proceeding (Adv. No. 04–01164) was ever entered. Pursuant to the BAP Clerk's order of August 23, 2004, and the fact that no separate judgment was entered within 14 days of the order, the separate document requirement is deemed waived pursuant to *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

6. Although the Loan Agreement specified that Utah law would govern, the parties did not argue or cite to Utah law so the court construed Utah law to be the same as Washington law.

7. Cases holding the assignments were ineffective include *Liberty Life Assurance Co. of Boston v. Stone St. Capital, Inc.*, 93 F.Supp.2d 630, 638 (D.Md.2000); *Townsend v. Hartford Life Ins.*, 1999 U.S. Dist. LEXIS 21783 at *4–5; *Johnson v. First Colony Life Ins. Co.*, 26 F.Supp.2d 1227, 1230 (C.D.Cal.1998); *Continental Cas. Co.*, 886 So.2d 1004; *In re Duboff,*

Rather than relying on Article 9, many courts have focused on balancing competing contract principles, such as freedom of contract and restraint on alienability concerns, as well as on the importance of giving effect to the terms agreed to by the parties. Taking this approach, some have looked to §§ 317 and 322 of the Restatement (Second) of Contracts [8] in analyzing the effectiveness of non-assignment clauses under general contract principles. *See*

290 B.R. 652; *CGU Life Ins. Co.*, 275 Ga. 328, 567 S.E.2d 9; *Bachus,* 741 N.Y.S.2d at 620, 294 A.D.2d 818; *McKay v. Aetna Cas. & Sur. Co.*, No. CV990590195S, 2000 WL 371464, at *3–4, 2000 Conn.Super. LEXIS 840, at *9 (Mar. 29, 2000); *Cavallaro v. SAFECO Assigned Benefits Co.*, No. CV990362118S, 1999 WL 1126320, at *9–10, 1999 Conn.Super. LEXIS 3211, at *27–28 (Nov. 18, 1999); *Bobbitt v. SAFECO Assigned Benefits Serv. Co.*, No. CV990588205S, 1999 WL 703066, at *8, 1999 Conn.Super. LEXIS 2347, at *25 (Aug. 24, 1999); *Piasecki v. Liberty Life Assurance Co. of Boston*, 312 Ill.App.3d 872, 245 Ill.Dec. 340, 728 N.E.2d 71, 74 (2000); *Green v. Safeco Life Ins. Co.*, 312 Ill.App.3d 577, 245 Ill. Dec. 140, 727 N.E.2d 393, 397 (2000); *Henderson v. Roadway Express*, 308 Ill.App.3d 546, 242 Ill.Dec. 153, 720 N.E.2d 1108, 1109–10 (1999); *Wentworth v. Jones*, 28 S.W.3d 309, 312, 315 (2000).

Courts that have found assignments to be valid include: *Western United Life Assurance Co. v. Hayden*, 64 F.3d 833, 842–843 (3d Cir. 1995); *In re Brooks*, 248 B.R. 99, 105 (Bankr. W.D.Mich.2000); *In re Terry*, 245 B.R. 422, 427–28 (Bankr.N.D.Ga.2000); *In re Cooper*, 242 B.R. 767, 772 (Bankr.S.D.Ga.1999); *In re Freeman*, 232 B.R. 497, 503 (Bankr.M.D.Fla. 1999); *Wonsey v. Life Ins. Co. of N. Am.*, 32 F.Supp.2d 939, 944 (E.D.Mich.1998); *Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 757 A.2d 526, 528 (2000); and *Buchanan v. Am. Mut. Life Ins. Co.*, No. 550420, 1999 WL 1081346, at *3, 1999 Conn.Super. LEXIS 3094, at *8 (Nov. 15, 1999).

8. Restatement 2d of Contracts § 317 provides:

Assignment of a Right

(1) An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to

*e.g., In re Terry,* 245 B.R. at 426–427; *In re Cooper,* 242 B.R. at 771; *In re Berghman,* 235 B.R. 683, 690–691 (Bankr. M.D.Fla.1999); *In re Freeman,* 232 B.R. at 503; *Stone,* 93 F.Supp.2d at 637; *Wonsey,* 32 F.Supp.2d at 944; *Grieve v. General American Life Ins. Co.,* 58 F.Supp.2d 319, 322–324 (D.Vt.1999). Courts have also considered the potential adverse impact of assignments on favorable tax treatment afforded parties to structured settle-

performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.

(2) A contractual right can be assigned unless

(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or

(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

(c) assignment is validly precluded by contract.

Restatement 2d of Contracts § 317.

And Restatement 2d of Contracts § 322 provides:

Contractual Prohibition of Assignment

(1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.

(2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,

(a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation;

(b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective;

(c) is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition.

Restatement 2d of Contracts § 322.

ment agreements. *See e.g., Liberty Life,* 93 F.Supp.2d at 634; *CGU Life Ins. Co.,* 275 Ga. at 330, 567 S.E.2d 9; *Grieve,* 58 F.Supp.2d at 323; *Piasecki,* 245 Ill.Dec. 340, 728 N.E.2d at 73; *Henderson v. Roadway Express,* 242 Ill.Dec. 153, 720 N.E.2d at 1112–1113.

The application of Article 9 to the assignability of payments under structured tort settlement agreements is not always evident. First, the "transfer of an interest in or an assignment of a claim under a policy of insurance" that does not constitute proceeds of collateral is expressly excluded from Article 9. Section 9–109(d)(8). Second, the "assignment of a claim arising in tort, other than a commercial tort claim" is also excluded from Article 9. Section 9–109(d)(12); *In re Ore Cargo, Inc.,* 544 F.2d 80 (2d Cir.1976)(an Article 9 security agreement cannot bestow a security interest in tort settlement proceeds other than a commercial tort claim).

At issue here is UCC § 9–109(d)(12) and whether it applies to tort proceeds.[9] The meaning of "a claim arising in tort" is not defined in the statute and there is no majority rule in the decisional authority. *See e.g., Owen v. CNA Ins./Cont'l Cas. Co.,* 167 N.J. 450, 457, 771 A.2d 1208 (2001); *Barclays Bus. Credit, Inc. v. Four Winds Plaza Partnership,* 938 F.Supp. 304, 308 (D.Vi.1996). Though some courts have held that the exclusion does apply to tort proceeds, the Official Comment, Note 15 to UCC § 9–109, seems to suggest otherwise. The Comment provides, in part:

> 15. Tort Claims. Subsection (d)(12) narrows somewhat the broad exclusion of transfers of tort claims under former Section 9–104(k). This Article now applies to assignments of "commercial tort claims" (defined in Section 9–102) as well as to security interests in tort claims that constitute proceeds of other collateral (e.g., a right to payment for negligent destruction of the debtor's inventory). Note that **once a claim arising in tort has been settled and reduced to a contractual obligation to pay (as in, but not limited to, a structured settlement), the right to payment becomes a payment intangible and ceases to be a claim arising in tort.**

UCC § 9–109, Official Comment, Note 15 (emphasis added).

The notion that a tort claim, once reduced to a settlement, becomes contractual in nature and ceases to be a claim arising in tort is not a foreign concept. As with former UCC § 9–318(4), recodified as UCC § 9–406(d), which provides that non-assignment clauses in contracts are ineffective, the Comment to UCC § 9–109 reflects a shift in legal doctrine taking place in response to current business practices where accounts and other rights under contracts have become the collateral securing an ever-increasing number of financing transactions. *See* former UCC § 9–318(4), Official Comment, Note 4 ("[I]t has been necessary to reshape the law so that these intangibles, like negotiable instruments and negotiable documents of title, can be freely assigned.").

However, where structured settlement factoring transactions are concerned, such as the one entered into between Gallagher and Singer, adopting the simplistic view that tort proceeds are freely assignable, and thus subject to the protections of Arti-

---

**9.** UCC § 9–109(d)(12) provides:
This article does not apply to:
(12) an assignment of a claim arising in tort, other than a commercial tort claim, but Sections 9–315 and 9–322 apply with respect to proceeds and priorities in proceeds;

cle 9, is somewhat problematic for several reasons.[10]

First, there is a strong public policy against unrestricted consumer-based factoring transactions. Allowing assignments could permit factoring companies to take unfair advantage of individuals, such as Debtor, by purchasing their payment rights for a deeply discounted lump sum payment. *Grieve*, 58 F.Supp.2d at 324 ("This court will not lend its approval to the voiding of unambiguous, bargained-for contract terms in order to enable Singer to profit, at an exorbitant rate of interest, from Grieve's financial distress.") Such practices could imperil the assignor's long-term financial security and subvert the Congressional policy underlying the tax advantages accorded structured settlements. *Id.; see also R & P Capital Res., Inc. v. Metro. Life Ins. Co.*, 2 Misc.3d 220, 772 N.Y.S.2d 461, 462 (N.Y.Sup.Ct. 2003)("[T]hese purchases have not been looked upon favorably by courts or legislatures. In particular, courts have refused to approve factoring transactions where the annuity contract contains a non-assignment clause.")

Both the federal government and numerous states, including Washington, have enacted strong measures to deter factoring transactions such as the one at issue in this case.[11] *See* 26 U.S.C. § 5891(a)(imposing a 40% tax on anyone directly or indirectly receiving payments under a structured settlement factoring transac-

tion); RCWA § 19.205.030 (2001)(effective July 22, 2001). In Washington, a direct or indirect transfer of structured settlement payment rights now requires advance approval, by court order which makes express findings that the transfer, among other things, is in the best interest of the payee. RCWA § 19.205.030. Washington's law was enacted, however, after Gallagher entered into the Loan Agreement.

Second, adopting the view that structured settlement tort proceeds are included under Article 9, but are freely assignable, begs the question posed by the bankruptcy court and others: what good is the exclusion if it applies only to tort claims but not derivative insurance rights or proceeds? *See Barclays*, 938 F.Supp. at 309 ("If the scope provisions of Article Nine, with their accompanying official comments, are construed to include certain rights derived from a tort cause of action, the Code's exclusion of 'any claim arising out of tort' would become meaningless due to the ease with which it could be circumvented by assignment of these rights.") *quoting* Professor Harold R. Weinberg, *Tort Claims as Intangible Property: An Exploration from an Assignee's Perspective*, 64 Ky. L.J. 49, 87 (1975–76).

Professor Gilmore, one of the primary drafters of Article 9, has commented that tort claims were specifically excluded from Article 9 as "beyond the pale with respect to a statute devoted to commercial financ-

---

10. The term "structured settlement factoring transaction" refers to a transfer of structured settlement payment rights (including portions of structured settlement payments) made for consideration by means of sale, assignment, pledge, or other form of encumbrance or alienation for consideration. 26 U.S.C. § 5891(c)(3)(A).

11. The following states have enacted laws requiring prior judicial or administrative approval of a transfer of structured settlement

rights: Arizona, California, Delaware, Florida, Georgia, Idaho, Iowa, Indiana, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington and West Virginia. *In re Goins*, 2002 Bankr.LEXIS 1736, *36–37 (Bankr.D.Ky.2002).

ing." 1 Grant Gilmore, *Security Interests in Personal Property* § 10.7 (1965).

We have found no Ninth Circuit cases discussing the scope of former UCC § 9–104(k) or UCC § 9–109(d)(12) in the context of structured settlements. Though there is ample authority upholding the effectiveness of non-assignment clauses in structured agreements, most courts doing so tend to rely on authority other than the Article 9 exemption.

In *Johnson v. First Colony,* a district court decision from the Central District of California, the plaintiffs purported to assign to a lender in exchange for a lump sum payment, their right to periodic payments under a structured settlement agreement containing a non-assignability clause. 26 F.Supp.2d at 1227–28. First Colony, the obligor under the settlement agreement, refused to honor the assignment and plaintiffs sought enforcement of the assignment through declaratory relief. *Id.* at 1228.

Applying California law, the court noted that although there is a strong policy in favor of enabling persons to transfer property freely, it is also well-settled that parties are free to "agree by contract to give up that right, and such an agreement will generally be given full effect by the courts." *Id.* at 1229. Non-assignability clauses are thus not inherently suspect, and are routinely enforced. *Id.* (citation omitted). Finding that plaintiffs had cited no authority supporting their position that the non-assignment provision was an unreasonable restraint on alienation, the court upheld the non-assignment provision. *Id.* at 1230.

■ Similarly, under Washington law, when a contract prohibits assignment in specific terms, the assignment will be deemed void against the obligor. *Portland Elec. v. City of Vancouver,* 29 Wash. App. 292, 627 P.2d 1350, 1351 (1981)(upholding a non-assignment clause which provided that the "the Contractor shall not assign this contract or any part thereof, or any moneys due or to become due thereunder, without the written prior approval of the Owner").

The bankruptcy court here held that Singer could not avail itself of Article 9 protection because Gallagher's claim was one "arising" out of a tort. Specifically, the court reasoned that "the language of the UCC, in effect, extends the definition beyond the tort claim itself by using the word 'arising'." Transcript of Proceedings, June 4, 2002, 6:10–15. To hold otherwise, the court explained, would render the anti-assignment clauses in these types of structured settlements meaningless because these are the very situations the anti-assignment clauses are meant to cover.

Debtor contends that *Johnson v. First Colony,* among other cases, supports the court's ruling, while Singer argues that the holding in the *Johnson* case is distinguishable because in that case, it was First Colony (the original obligor under the structured settlement agreement), who objected to the assignment while here, Allstate has not objected to the assignment. Singer argues further that the bankruptcy court's decision is not based on any legal authority and that the court should have adopted the reasoning of the court in *In re Chorney,* 277 B.R. 477, 488 (Bankr. W.D.N.Y.2002). We agree with Debtor.

*Chorney* is distinguishable in at least two significant ways. First, the nature of the transactions was different. There, unlike here, the debtor never had a contractual interest in the subject annuity. 277 B.R. at 487. The court specifically found that, unlike in some structured settlements that are funded by an annuity where the recipient of the structure settlement may

be the payee of the funding annuity, in *Chorney,* CNA was both the owner and the payee of the Continental annuity. The *Chorney* debtor's only connection to the Continental annuity was that he was used as the annuitant by Continental for actuarial purposes and, CNA directed Continental, solely for its convenience, to make all payments directly to the Debtor. *Id.* Since CNA could at any time redirect the payments in its sole discretion, the debtor in that case did not have any direct claim to the payments due under the annuity. *Id.* In the instant case, Allstate funded its periodic payment obligation by purchasing an annuity contract from Allstate Life, providing that annuity payments be sent directly to Gallagher. There is no indication that Allstate was free to redirect the payments at its sole discretion.

Additionally, *Chorney* did not involve an assignment but rather, the granting of a security interest under former Article 9, the prohibition of which was specifically made ineffective by former § 9–318(4). Therefore, the court held, while it was undisputed that the settlement agreement contained language prohibiting the debtor from granting a security interest in the structured settlement payments, "that is exactly what Section 9–318(4) of the Former Article 9 makes ineffective." *Id.* at 489.

■■■ The fact that the bankruptcy court did not specifically cite to authorities supporting its ruling awarding summary judgment in favor of Gallagher is not fatal to its holding. If the trial court's decision is correct, it must be affirmed. *See United States v. $129,374 in U.S. Currency,* 769 F.2d 583, 586 (9th Cir.1985); *see also In re Curry and Sorensen, Inc.,* 57 B.R. 824, 829 n. 5 (9th Cir. BAP 1986). Furthermore, this panel can affirm a trial court on any ground finding support in the record, even if it is not the ground articulated by the

court as the basis for its ruling. *In re Aquaslide 'N' Dive Corp.,* 85 B.R. 545, 549–550 (9th Cir. BAP 1987)(affirming the court's granting of summary judgment, even though neither party requested it and the court did not articulate its reasons for the award).

■■ Contrary to Singer's contention, while there is no clear majority rule concerning the application of Article 9 to tort claim proceeds, we find that there is sufficient support for the court's holding that proceeds from a tort claim constitute an interest "arising" out of tort which are exempted under UCC § 9–109(d)(12). *See e.g., Barclays Bus. Credit,* 938 F.Supp. at 309, *citing* William D. Hawkland, Richard A. Lord and Charles C. Lewis, *Uniform Commercial Code Series,* Sec. 9–104:12 (1996)("Although an assignment of the right to receive the proceeds of a settlement contract should theoretically constitute a secured transaction, a strong argument can be made that subsection 9–104(k) excludes this assignment as well, since it too would be a transfer of a claim that arose out of a tort.")

Additionally, there is support for the court's ruling on other grounds, including under Ninth Circuit law, generally, and under Washington law, specifically. *See e.g., Davidowitz v. Delta Dental Plan of California,* 946 F.2d 1476, 1478, (9th Cir. 1991) *citing,* Restatement (Second) of Contracts § 322 (1981)("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); *Portland Elec.,* 627 P.2d at 1351 ("When a contract prohibits assignment in 'very specific' and 'unmistakable terms' the assignment will be void against the obligor.").

After oral argument, and pursuant to Fed. R.App. P. 28(j), Singer submitted a supplemental pleading directing our attention to our recent decision in *In re Wiers-*

*ma,* 324 B.R. 92 (9th Cir. BAP 2005) ("*Wiersma* (2005)").

The Wiersmas were Idaho dairy farmers whose cows had been subjected to electrical shocks from faulty wiring and had been culled until the herd was liquidated. *Id.* at 99. Debtors sued the electrical contractor for the damages to its cattle and settled the suit for $2.5 million. The bank held a valid and perfected security interest in debtors' dairy herd pursuant to a credit agreement.

When the debtors proposed using the settlement funds to purchase cows and begin anew in Georgia, giving the bank a replacement lien in the new cows, the bank objected. *Id.* at 100. Under its credit agreement with the debtors, the bank held a security interest in "all proceeds and products of the collateral, including, but not limited to, the proceeds of any insurance thereon." *Id.* at 99. The bankruptcy court had already found that the bank had a secured interest in the settlement proceeds. *Id.* The Wiersmas argued, unsuccessfully, that the bank did not have a security interest in the settlement proceeds because the underlying lawsuit sounded in tort. Significantly, the bank's security interest in the collateral, however, existed prior to the incident creating the tort. *Id.*

We concluded that under revised Article 9, the settlement proceeds were covered by the bank's security interest to the extent of the value of the original collateral. These facts are not analogous to those before us and, therefore, we find nothing in the *Wiersma* (2005) case that leads us to a different outcome.

Additionally, as Gallagher argues, *Wiersma* (2005) is inapplicable here because the settlement funds in that case were from a lawsuit involving damage to collateral. Our discussion of UCC § 9–109, Comment 15, was limited to whether a cash settlement of a lawsuit for damage to collateral constitutes either proceeds of the Bank's livestock collateral or an after-acquired "payment intangible" for collateral. *Id.* at 107.

Because we find that the court did not err in holding that Article 9 does not apply to the Loan Agreement, we need not address Singer's argument that UCC § 9–406(d) (formerly UCC § 9–318(4)) renders the non-assignment language void.

B. *The Language in the Settlement Agreement is Sufficient to Invalidate the Assignment.*

■ Singer next argues that the language in the non-assignment clause does not manifest the parties' intent to invalidate an assignment once made. We disagree.

■ As noted in *Johnson v. First Colony,* non-assignment clauses are not inherently suspect. 26 F.Supp.2d at 1229. Parties are free to agree that a contract is non-assignable and such an agreement will generally be given full effect by the courts. *Id.* Courts do not impose formulaic restraints on the language that contracting parties may employ to craft an anti-assignment clause that limits the power to assign. When a contract prohibits assignment in very specific and unmistakable terms, any purported assignment is generally void. *Id.* at 1229–30 (upholding anti-assignment provision in structured settlement agreement in spite of fact that the provision did not contain the words "void" or "invalid"); *accord, Stone,* 93 F.Supp.2d at 638; and *Grieve,* 58 F.Supp.2d at 321.

In this case, the non-assignment clause of the structured settlement agreement is unambiguous. Nothing contained in the clause suggests that an assignment, made in contravention to the terms therein, would in any way be deemed effective.

## C. *Estoppel & Waiver*

Last, Singer argues that Gallagher is estopped from asserting the non-assignment provision because she waived the provision when she signed the Loan Agreement and accepted the funds.

 Under Washington law, equitable estoppel requires: "(1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in *reasonable* reliance on that act, statement, or admission; and (3) injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." *Berschauer/Phillips v. Seattle School Dist.*, 124 Wash.2d 816, 881 P.2d 986, 994 (1994)(emphasis added).

 Because equitable estoppel is not a favored doctrine, the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence, that is, by evidence of sufficient persuasive impact as to cause the trier of fact to believe that the fact at issue is highly probable. *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wash.2d 726, 853 P.2d 913 (1993). Further, the doctrine does not apply if the injured party had equal opportunity to determine the facts. *Public Util. Dist. v. W.P.P.S.S.*, 104 Wash.2d 353, 705 P.2d 1195 (1985).

Singer has not presented sufficient evidence to establish equitable estoppel. Singer's reliance on *In re Kaufman*, 37 P.3d 845 (Okla.2001) is misplaced. The *Kaufman* court held, under factually similar circumstances, that a party who agreed to waive the non-assignment clause was estopped from later asserting it, even though the court simultaneously found that they lacked the power to assign the payments under the structured settlement. *Id.* at 855. The *Kaufman* holding, however, relies on long-standing Oklahoma juris-

prudence specifically prohibiting an assignor from asserting non-assignability against its assignee. *Id.* Singer has cited no such similar Washington statutory or common law.

With respect to the second element, Singer has not presented evidence sufficient to show that its reliance on Gallagher's waiver of the non-assignment clause was reasonable. In light of the numerous cases Singer has litigated, many unsuccessfully, involving the waiver or attempted waiver of these non-assignment clauses, it was not reasonable for Singer to rely on Debtor's waiver of the clause. As the obviously more sophisticated party—one that has been engaged in purchasing and litigating structured settlements across the country—Singer no doubt was aware of the potential adverse impact of the anti-assignment clause on the Loan Agreement. When Singer entered into the Loan Agreement, it was certainly well aware of the important public policy implications behind the non-assignment clause, as evidenced by its attempts to contract around it. Contrary to Singer's contention, finding that Debtor is not estopped from asserting the non-assignment clause does not leave Singer with "nothing". Singer still holds a claim against Debtor, albeit unsecured, for the proceeds advanced to her under the Loan Agreement.

 As to the issue of waiver, the doctrine ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. *Dombrosky v. Farmers Ins. Co.*, 84 Wash.App. 245, 928 P.2d 1127, 1134 (1996). It may result from an express agreement, or be inferred from circumstances indicating an intent to waive. *Id.*

Singer claims Debtor waived her right to assert the non-assignment clause when she entered into the Loan Agreement which contains express waivers of her rights under the structured settlement. Debtor contends that because the court found that the structured settlement contained an absolute prohibition on assignments, Debtor did not have the ability to waive the provision. We agree with Debtor. To find that the non-assignment clause is effective and enforceable, and at the same time find that Debtor was empowered to waive the non-assignment provision in an assignment of her rights to Singer, would render the original finding upholding the effectiveness of the clause meaningless.

Because we find no error with the court's ruling that the non-assignment clause is effective, we need not address Gallagher's contention that her rights under the structured settlement are non-assignable because the settlement resulted from a court order compromising a claim of a minor, under California Probate Code § 3600, and that the agreement is thus subject to continuing supervision of the court.

### CONCLUSION

Though the court did not state the legal basis of its ruling, adequate authority exists to support the court's holding that the proceeds from Debtor's structured settlement arose out of tort and were, therefore, not subject to Article 9 provisions. Based on the foregoing, we AFFIRM.