A11A2418, A11A2419. GEORGIA CASUALTY AND SURETY COMPANY v. WOODCRAFT BY MACDONALD, INC. et al.; and vice versa.
(726 SE2d 793)

PHIPPS, Presiding Judge.

After obtaining monies pursuant to a subrogation clause of a commercial property insurance policy, Georgia Casualty and Surety Company was sued in connection therewith by Brad MacDonald and his company, Woodcraft by MacDonald, Inc. d/b/a Coachcraft (hereinafter "Coachcraft"). They alleged that they were insured parties, yet had not been made whole for their underlying losses. They sought damages from Georgia Casualty, asserting theories of breach of the insurance policy and bad faith refusal to ensure they were made whole. On cross-motions for summary judgment, the trial court rejected Georgia Casualty's argument that it could not be held liable for pursuing its contractual subrogation rights, but ruled in the insurance company's favor with respect to the bad faith claim. Because the record establishes that Georgia Casualty was entitled to summary judgment with respect to both claims, we affirm in part and reverse in part.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law."[1] "In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant."[2]

## Background Facts

During the night of February 14, 2004, an underground gas pipeline owned and operated by Atmos Energy Corporation fractured beneath Coachcraft's business premises. Natural gas filled the Coachcraft building, and at approximately 1:20 a.m. on February 15, a fire and explosion damaged or destroyed the building and certain of its contents.

Coachcraft was in the business of renovating the interiors of recreational vehicles (RVs). Property that was damaged or destroyed by the fire and explosion included RVs belonging to customers, tools and other personal property belonging to Coachcraft employees, and an RV and personal tools that belonged to the company's owner, Brad MacDonald.

## Insurance Coverage and Proceeds Paid

At the relevant time, Coachcraft maintained two insurance policies with Georgia Casualty. One, a commercial garage policy, provided physical damage coverage for customers' vehicles stored on the Coachcraft property. Pursuant to this policy, Georgia Casualty paid $1,307,169 collectively to customers whose vehicles were damaged or destroyed as a result of the fire and explosion.

The other one was a commercial property policy, which covered damage to Coachcraft's building and business personal property, as well as Coachcraft's losses for business interruption and related expenses. Pursuant to this policy, Georgia Casualty paid Coachcraft $220,000 for the damaged building, $100,000 for business interruption, $40,000 for damage to business personal property, and $8,000 collectively to certain Coachcraft employees for damage to their personal property. These payments, totaling $368,000, exhausted all available limits of coverage under this policy. Coachcraft has continued to maintain that the losses it incurred during the fire and explosion exceeded the policy limits.

---

[1] OCGA § 9-11-56 (c).

[2] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

## Subrogation Litigation in Federal Court

In July 2005, Georgia Casualty filed suit as subrogee under the two insurance policies, seeking to recover from Atmos the $1,307,169 paid to the individual owners of damaged personal property and the $368,000 paid to Coachcraft, plus interest, attorney fees and expenses of litigation. According to Georgia Casualty's suit, Atmos had negligently maintained the natural gas pipeline. Atmos removed the case to federal district court. About two months later, in October 2005, Brad MacDonald and Coachcraft intervened as plaintiffs, seeking to recover from Atmos their alleged losses sustained in excess of the commercial property policy.

Asserting a litany of defenses, Atmos contended that it had no liability to any of the plaintiffs. In addition, Atmos filed various indemnification and contribution counterclaims against Brad MacDonald and Coachcraft, alleging that they had been negligent in failing to properly construct and ventilate the Coachcraft building. To support each of its contentions, counterclaims, and affirmative defenses, Atmos provided expert witness testimony.

Georgia Casualty hired and paid for a team of expert witnesses needed to support its liability claims against Atmos and to defend against the counterclaims that were asserted by Atmos against Brad MacDonald and Coachcraft. Then, after discovery, Atmos filed a *Daubert* motion, which the federal court denied.

Two-and-a-half years after Georgia Casualty filed its subrogation suit, in January 2008, the insurance company and Atmos reached an agreement in principle: Georgia Casualty would accept from Atmos $950,000 in exchange for a complete release of all of Georgia Casualty's claims (totaling $1,675,169). As part of this settlement, Atmos agreed to dismiss its counterclaims against Brad MacDonald and Coachcraft; and Georgia Casualty and Atmos agreed that Brad MacDonald and Coachcraft would be allowed to continue to pursue their claims for damages against Atmos. Georgia Casualty filed a motion to dismiss its complaint against Atmos; and Atmos filed a motion to dismiss its counterclaims against Brad MacDonald and Coachcraft.

But Brad MacDonald and Coachcraft filed an objection to Georgia Casualty's motion to dismiss, and an objection to the settlement between Georgia Casualty and Atmos. They argued that Georgia Casualty was prohibited from settling its subrogation claims with Atmos until such time as they were "made whole." The federal court conducted a hearing at which counsel for Brad MacDonald and Coachcraft pursued these objections. The court denied the objections, specifically determining that Brad MacDonald and Coachcraft were

neither prejudiced nor prohibited from continuing to pursue their non-covered claims against Atmos and stating further that "this will give you something in the case to potentially appeal." Thereupon, the court approved the settlement and granted the motions to dismiss.

Brad MacDonald and Coachcraft elected not to proceed to trial; they settled with Atmos for $125,000.

## The Instant Litigation

Dissatisfied with their settlement amount, Brad MacDonald and Coachcraft made a demand upon Georgia Casualty, asserting that Georgia Casualty was required to pay from the proceeds that it had received from Atmos the amount they claimed would make them whole. (Brad MacDonald would later depose that this amount was approximately $179,130.59 — an amount which represented their alleged total losses of $629,605.66, minus $368,000 paid as policy limits by Georgia Casualty, minus $125,000 paid in settlement by Atmos, plus $42,524.93 in attorney fees incurred in federal court.) When Georgia Casualty denied their demand, this lawsuit ensued.

Brad MacDonald and Coachcraft filed a complaint in superior court, alleging that Georgia Casualty had "breached the contract of insurance by not making its insureds whole for their losses prior to accepting a subrogation settlement with the tortfeasor."[3] According to them, "Georgia Casualty had a *duty to ensure* that its insureds, the Plaintiffs, were made whole before Georgia Casualty, as subrogee, accepted money from the tortfeasor."[4] They claimed that Georgia Casualty had violated "Georgia law and public policy by accepting a settlement from the tortfeasor without its insureds having been made whole for their losses."

In addition, Brad MacDonald and Coachcraft alleged in their complaint, "Defendants are guilty of bad faith towards its insureds by refusing to ensure that its insureds were made whole for their losses before settling subrogation claims alleged against the tortfeasor and seeking a dismissal from the lawsuit against Atmos Energy."

Georgia Casualty denied liability and moved for summary judgment, pointing out that it had paid the limits of the policy at issue and arguing further that it could not be held liable for damages under either asserted theory for the reason that Georgia law did not impose

---

[3] The record does not disclose whether Brad MacDonald or Coachcraft pursued an appeal in federal court. And the parties to this appeal do not assert that issues raised here are precluded.

[4] (Emphasis supplied.)

the duty alleged. In their cross-motion, Brad MacDonald and Coach-craft conceded that Georgia Casualty had paid the policy limits, but maintained that they had sustained losses in excess thereof. They took the position that

> [t]he Georgia "made whole" doctrine means that an insurance company exercising subrogation rights must demonstrate that the insured was made whole for its loss before it may participate in a recovery from the tortfeasor . . . . The law of Georgia requires proof that the insured was "made whole" for its loss before the rights of subrogation vest.

Brad MacDonald and Coachcraft urged from the superior court a ruling to the effect that Georgia Casualty was bound by such duty and therefore could be held liable.

The superior court granted Brad MacDonald and Coachcraft's motion. Citing *Florida Farm Bureau Ins. Co. v. Martin*[5] and *Garrity v. Rural Mutual Ins. Co.*,[6] the court held that "the 'made whole' doctrine is applicable to . . . property claims." Thereupon, it found "Georgia Casualty to be liable to plaintiffs to the extent plaintiffs have not been made whole and that Georgia Casualty has received such sums through subrogation claims." However, the court granted Georgia Casualty's motion as to the bad faith claim.

### Case No. A11A2418

1. Georgia Casualty contends that the trial court erred by granting Brad MacDonald and Coachcraft's motion and denying its motion, maintaining that it breached no duty in pursuing its subrogation rights provided by the commercial property policy.

The subrogation clause of that policy stated:

> **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**. If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment.

Asserting that this language is clear and unambiguous, Georgia Casualty contends that the trial court erred by imposing thereupon a

---

[5] 377 S2d 827 (Fla. Dist. Ct. App. 1979).
[6] 253 NW2d 512 (Wis. 1977).

made whole condition. Georgia Casualty proffers three reasons for overturning the trial court's ruling. First, it points out that the commercial property policy does not place a made whole condition on the right of subrogation. Second, it argues that Georgia law does not require that a commercial property policy contain a made whole condition on the right of subrogation, asserting that the only cases wherein Georgia courts have held that insurance policies must include a made whole condition involve health insurance or workers' compensation benefits.

Third, Georgia Casualty asserts that, even if a made whole condition applies to commercial property policies, it did not violate it. Georgia Casualty claims that its settlement with Atmos did nothing to prevent Brad MacDonald and Coachcraft from pursuing their claims against Atmos, which still had funds to cover those claims. To the extent they were not made whole, Georgia Casualty posits, it is because they decided to settle short, rather than proceed to trial.

"The right of subrogation can arise from either equity, contract, which is referred to as 'conventional subrogation,' or statute."[7] "Traditionally, a subrogee 'stands in the shoes' of the insured and can pursue any cause of action assigned to it."[8] "In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."[9] "It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears."[10] And under OCGA § 13-8-2 (a), "[a] contract that is against the policy of the law cannot be enforced."

Brad MacDonald and Coachcraft maintain that, as a matter of public policy "in Georgia, the 'made whole' doctrine means that an insurance company exercising subrogation rights must demonstrate that the insured was made whole for its loss before it may participate in a recovery from the tortfeasor." To support their position, they cite *Davis v. Kaiser Foundation Health Plan of Ga.,*[11] *Landrum v. State Farm,*[12] and two workers' compensation cases, *Canal Ins. Co. v. Liberty Mut. Ins. Co.*[13] and *Bartow County Board of Ed. v.*

---

[7] *State Farm &c. Ins. Co. v. Cox,* 271 Ga. 77 (515 SE2d 832) (1999) (citation omitted).

[8] *Landrum v. State Farm &c. Ins. Co.,* 241 Ga. App. 787, 788 (527 SE2d 637) (2000).

[9] *SawHorse, Inc. v. Southern Guaranty Ins. Co.,* 269 Ga. App. 493, 494 (1) (604 SE2d 541) (2004) (punctuation and footnote omitted).

[10] *Jones v. Jones,* 280 Ga. 712, 714 (1) (632 SE2d 121) (2006) (citation and punctuation omitted).

[11] 271 Ga. 508, 510 (521 SE2d 815) (1999).

[12] Supra.

[13] 256 Ga. App. 866 (570 SE2d 60) (2002).

*Ray*.[14] While each case acknowledges Georgia's public policy interests related to subrogation, none of those cases provides for a result in their favor.

In *Davis*, a medical benefits provider, based on an insurance policy provision, sought reimbursement from its insured for the benefits paid for her medical expenses, notwithstanding that the insured had not been completely compensated.[15] The question posed by the Supreme Court of Georgia was:

> Whether the complete compensation rule is applicable to a contract of insurance entered into prior to July 1, 1997, which contract contains an express provision requiring the insured to reimburse the insurer for benefits received as a result of injury or illness caused by a third party or in a motor vehicle accident.[16]

The Court answered yes. In reaching that answer, the Court looked to the legislature's 1997 enactment of OCGA § 33-24-56.1,[17] which codified the complete compensation rule,[18] then applied principles of statutory construction to hold:

> [T]he public policy of this State will not permit insurers to require an insured to agree to a provision that permits the insurer, *at the expense of the insured*, to avoid the risk for which the insurer has been paid by requiring the insured to reimburse the insurer whether or not the insured was completely compensated for the covered loss.[19]

The Court reasoned, "Where either the insurer or the insured *must* to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume."[20] Accordingly, the Court concluded that the insurance policy provision involved in that case was unenforceable as violative of public policy because it required reimbursement from the insured without regard to whether the insured was completely compensated.[21]

---

[14] 229 Ga. App. 333 (494 SE2d 29) (1997).

[15] *Davis*, supra at 508-509.

[16] Id. at 509.

[17] See, e.g., OCGA § 33-24-56.1 (b) (1), (e).

[18] See *Landrum*, supra at 788.

[19] *Davis*, supra at 510 (emphasis supplied).

[20] Id. at 511 (citation and punctuation omitted; emphasis supplied).

[21] Id.

But under circumstances inapposite to those underlying *Davis*, this court concluded in *Landrum*[22] that the "full compensation" rule did not bar the insurer's subrogation rights against the tortfeasor, notwithstanding the fact that the insured had not been completely compensated.[23] In that personal injury/automobile accident case,[24] State Farm Mutual Automobile Insurance Company proceeded under OCGA § 33-7-11 (f)[25] to recover from the tortfeasor of the automobile accident the amount it (State Farm) had paid the injured party, King,[26] under King's uninsured motorist coverage.[27] The tortfeasor argued that State Farm could not assert its subrogation rights against him, pointing out that King had not received full compensation for his loss.[28] This court rejected this mere circumstance as a bar to State Farm's pursuing its subrogation rights:[29]

> State Farm has not sought reimbursement from King, the injured party. It has not claimed any portion of the [insurance proceeds already] in King's possession. Therefore, the "full compensation" rule codified at OCGA § 33-24-56.1 (b) (1) does not prohibit State Farm's subrogation claim against [the tortfeasor]. Further, State Farm has not sought to recover medical or disability payments it made to King either from King or from [the tortfeasor] pursuant to a subrogation agreement. Therefore, OCGA § 33-24-56.1 (e) does not apply.[30]

The record confirmed further that

> this is not a contest between the insured and the insurer which could result in the insured going unpaid to some extent. Thus, pretermitting whether King was fully compensated for his loss under the circumstances of this case, allowing State Farm to exercise its subrogation rights against [the tortfeasor] will not deprive King of his priority under the full compensation rule. Moreover, to bar subrogation in this case would defeat one of the equitable purposes of

---

[22] Supra.
[23] *Landrum*, supra at 788.
[24] Id. at 787.
[25] Id. at 787-789.
[26] Id. at 789.
[27] Id. at 788.
[28] Id.
[29] Id. at 789.
[30] Id. at 789.

subrogation: to deter wrongdoing by placing the ultimate responsibility for paying an obligation on the person who in equity and good conscience ought to pay for it. For these reasons, we find that the full compensation rule does not defeat State Farm's subrogation rights under these circumstances.[31]

Similarly, in the instant case, Georgia Casualty did not seek reimbursement from Brad MacDonald or from Coachcraft, nor did the insurance company seek to recover medical or disability payments. The "full compensation" rule codified in OCGA § 33-24-56.1, therefore, does not apply.

Nor has the alleged tortfeasor in this case, Atmos, been shown to have limited assets such that "either the insurer or the insured must to some extent go unpaid."[32] Neither Brad MacDonald nor Coachcraft asserted that Atmos had limited resources, thus presenting "a contest between the insured and the insurer which could result in the insured going unpaid to some extent."[33] Indeed, this particular circumstance drew questions from the federal court judge.

At the hearing, the judge pointedly asked Brad MacDonald and Coachcraft's counsel for authority to support their position, given that the case was *not* one in which the tortfeasor was without sufficient assets such that a subrogation settlement between the tortfeasor and the insurance company "impairs the ability of the insured to pursue their claim against the tortfeasor. . . . You're going to be able to go to trial and recover whatever damages you can recover against Atmos." Counsel answered that he had not seen such case, adding: "There's been an amount of money recovered on this subrogation claim, . . . which is more than it would take to make my client whole for his loss. We have a claim against that money that was recovered from the tortfeasor up —." The court interrupted counsel to state "you don't have a claim against that money, but you've got a right to pursue a claim against Atmos for your damages and have a jury decide it just as if there was never any insurance paid." The court reasoned that "the full compensation rule is . . . not to guarantee you some compensation . . . it's to make sure that your insurance company, through its settlement of its subrogation claim, doesn't impair or impede your ability to pursue the tortfeasor."

But Brad MacDonald and Coachcraft have repeatedly expressed that, without the insurance company's assistance, they simply could

---

[31] Id. at 789-790 (citation and punctuation omitted).

[32] *Davis,* supra at 511 (citation and punctuation omitted).

[33] *Landrum,* supra at 789.

not afford to litigate their claims against Atmos. For example, when they turned to the superior court, Brad MacDonald and Coachcraft alleged in their complaint that "[they] had relied on Georgia Casualty taking the lead role in the litigation [and] that included funding the expense of the litigation"; that by settling out of the case, Georgia Casualty had "damaged or destroyed its insureds' ability to prepare the case effectively for trial"; and that as a result, Brad MacDonald and Coachcraft were forced to settle for less than the amount required to make them whole.

In his deposition, Brad MacDonald explained that with Georgia Casualty still in the case, "we were, sort of, in essence, riding their shirt tail. They were paying for the [expert] witnesses, because we couldn't afford that." Thus, in pursuing their claims against Atmos, they had not hired any expert. When Georgia Casualty was allowed to settle out of the case, Brad MacDonald recounted, "it, pretty much, just left us hanging." They made no attempt to negotiate a lower rate with any expert, determined they did not have enough money to proceed with a trial, and then settled.

In their brief to this court, Brad MacDonald and Coachcraft cite evidence that Georgia Casualty had vigorously litigated the claims in federal court over an extended period. They maintain, "With Georgia Casualty out of the case, Coachcraft and [Brad] MacDonald could not afford the enormous cost to continue the case, and mitigated its damages by settling with Atmos Energy for far less than its actual losses."

Yet Brad MacDonald and Coachcraft have cited this court to no authority that would bring those circumstances within the purview of Georgia's public policy concerns related to subrogation;[34] and we find none.[35] Even assuming that those concerns are invoked in the context of commercial property insurance policies (which Georgia Casualty refutes) and assuming further that Brad MacDonald and Coachcraft were not fully compensated for their losses when they settled with Atmos, we cannot conclude that Georgia's public policy nevertheless conditioned Georgia Casualty's contractual subrogation rights upon the insurance company's first "ensuring" that Brad MacDonald and

---

[34] But see *Chandler v. State Farm Mut. Automobile Ins. Co.*, 598 F3d 1115, 1120 (III) (A) (2) (9th Cir. 2010) (an insured may not sit back and do nothing to assert its rights against the responsible party, and then expect to be made whole by the insurer who enforces its subrogation rights).

[35] See, however, id. at 1120-1121 (III) (A) (2) (a rule requiring insurers to make insureds whole before subrogating themselves to insureds' claims would remove virtually any incentive insured might have to pursue her claims against the third-party tortfeasor, because the insured could simply take her "share" from amount recouped in subrogation by the insurer).

Coachcraft were made whole — including pursuing, on their behalf, Atmos through trial.[36] Under the circumstances of this case, Georgia Casualty's exercise of

> its subrogation rights against [Atmos] [did] not deprive [Brad MacDonald and Coachcraft] of [their] priority [as would be contemplated] under the full compensation rule. Moreover, to bar subrogation in this case [where the insureds simply determined they could not afford to litigate against the tortfeasor] would defeat one of the equitable purposes of subrogation: to deter wrongdoing by placing the ultimate responsibility for paying an obligation on the person who in equity and good conscience ought to pay for it.[37]

For the foregoing reasons, Georgia Casualty's subrogation rights were not defeated.[38]

Nothing in the workers' compensation cases of *Canal Ins. Co.*[39] and *Bartow County Board of Ed.*,[40] cited by Brad MacDonald and Coachcraft, provide for a different outcome. Those cases hinged on workers' compensation statutes.[41] The two cases cited by the superior court, and upon which Brad MacDonald and Coachcraft further rely,

---

[36] See generally *Winkelmann v. Excelsior Ins. Co.*, 650 NE2d 841, 845 (NY App. Div. 1995) (rejecting contention that "because the inherently unequal bargaining positions of the insurer and insured in negotiations with the third party's insurer naturally prejudice the insured," the insurer's right of subrogation should not arise until after the insured has been made whole); *Muller v. Society Ins.*, 750 NW2d 1, 3-4 (Wis. 2008) (the made whole doctrine does not apply when an insurer has fully satisfied its obligations under an insurance contract, given its insureds the opportunity to settle their claim with the tortfeasor and the tortfeasor's insurer, the pool of settlement funds available to the insureds exceeds the total claims of both the insureds and the insurer, and the insureds settle their claim, even though the insureds' settlement, together with the insurer's policy payment, does not satisfy the insureds' total claim; in these circumstances, the inequitable prospect of an insurer competing with its insureds for an inadequate pool of funds is not present, and the equities favor the insurer).

[37] *Landrum*, supra at 790 (citation and punctuation omitted); see generally *Chandler*, supra at 1120 (III) (A) (2) (a rule that would prevent an insurer from recouping its payout until after the insured has been made whole would place the risk of loss on insurer whenever the insured does not attempt to recover from third-party tortfeasor, even when the insured could obtain a full recovery from third-party tortfeasor); *Muller*, supra.

[38] See *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646, 647-648 (482 SE2d 325) (1997) (noting that subrogation, a doctrine originating in equity, is founded upon the dictates of refined justice; its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice); *Landrum*, supra at 787-789; see generally *Chandler*, supra; *Winkelmann*, supra; *Muller*, supra.

[39] Supra.

[40] Supra.

[41] *Canal Ins. Co.*, supra at 867 (1) (any claim by the employer or its insurer asserting subrogation rights against a third-party tortfeasor to the extent of workers' compensation payment made to the employee arises solely by operation of statute).

concern subrogation in the context of property insurance. But both cases are inapposite as involving tortfeasors that lacked sufficient funds.[42]

Because Georgia Casualty therefore was entitled to summary judgment on the claim of breach of contract, the trial court's rulings as to that claim are reversed.

### Case No. A11A2419

2. Given our conclusion in Division 1, there is no merit in Brad MacDonald and Coachcraft's challenge that the trial court erred in granting summary judgment to Georgia Casualty on their claim alleging bad faith refusal to ensure that they were made whole.

*Judgment reversed in Case No. A11A2418. Judgment affirmed in Case No. A11A2419. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 29, 2012 — 

*Bondurant, Mixson & Elmore, Naveen Ramachandrappa,* for appellant.
*Clarence M. Mullin,* for appellees.

---

[42] *Florida Farm Bureau Ins. Co.,* supra (insurer sought reimbursement under a subrogation claim from funds recovered by the insured, notwithstanding that the loss sustained exceeded the total recovery from all parties); *Garrity,* supra at 513-514 (amount sought by insured and insurer "was more than what was possibly recoverable under the [tortfeasor's insurance] policy").