**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0932. MCLARENS YOUNG INTERNATIONAL, INC. v. AMERICAN SAFETY CASUALTY INSURANCE COMPANY et al.

MCMILLIAN, Judge.

Appellant McLarens Young International, Inc. ("McLarens") appeals from the trial court's order denying its motion to stay arbitration and granting the motion to compel arbitration filed by appellees American Safety Casualty Insurance Company ("ASCIC") and Excalibur Reinsurance Corporation ("Excalibur"). As more fully set forth below, we now affirm.

The underlying facts are essentially undisputed. In September 2005, McLarens and ASCIC entered into a Claims Handling Agreement ("CHA") pursuant to which McLarens provided claims management and adjustment services for ASCIC in connection with claims or losses relating to policies of insurance ASCIC issued under

a Lawyers Professional Liability Program underwritten by Professional Coverage Managers, Inc. (the "PCM Program"). McLarens' duties under the CHA included the supervision of counsel retained to handle any litigation relating to claims submitted under ASCIC's policies, and in return, ASCIC had a duty to cooperate with respect to the claims submitted for handling under the CHA. Pertinent here, Article 12.1 of the CHA provided that "[a]ll matters in dispute solely between [ASCIC] and [McLarens] in relation to this Agreement, and whether arising during or after the period of this Agreement, shall be referred for arbitration in [the manner further set out therein]" ("Arbitration Provision").

One of the claims McLarens handled under the CHA concerned a professional malpractice claim filed against ASCIC's insureds, John Carey and the law firm of Carey and Danis, LLC (the "Carey Claim"), and other attorneys. Although it appears that the liability of the Carey defendants was minimal and that the plaintiff in that suit had indicated a willingness to settle his claim against the Carey defendants for $175,000, due to certain alleged failures of counsel representing the Carey defendants, ASCIC was ultimately required to pay the policy limits of $2 million to settle the claim.

Pursuant to a Casualty Excess Cession Reinsurance Agreement ("Reinsurance Agreement") providing for coverage of $2 million excess $1 million for claims under the PCM program, ASCIC then sought reimbursement from Excalibur. Ultimately, Excalibur paid the claim under the Reinsurance Agreement.

On April 3, 2014, ASCIC and Excalibur sent McLarens a letter jointly demanding arbitration "pursuant to the terms of the Claims Handling Agreement between ASCIC and McLarens." The letter specified that in the arbitration proceedings, "ASCIC/Excalibur" will seek 1) an order directing McLarens to pay ASCIC/Excalibur $2,000,000, which amount ASCIC was obligated to pay in satisfaction of the Carey Claim; and 2) an order directing McLarens to reimburse ASCIC/Excalibur for the amount of attorney fees and costs ASCIC incurred as a result of McLarens' negligence in its oversight of the Carey Claim and attorney fees incurred in connection with the arbitration.

On April 28, 2014, McLarens notified appellees' counsel that it could not "accede" to appellees' arbitration demand since it "purport[s] to advance claims on behalf of Excalibur" thereby placing it outside the scope of the arbitration provision in the CHA, which limits the right of arbitration to disputes solely between ASCIC

and McLarens. By letter dated that same date,[1] and apparently prior to the time that ASCIC received McLarens' response to the arbitration demand, appellees filed a demand for arbitration against McLarens with the American Arbitration Association ("AAA"), repeating the same relief sought in the previous demand. On May 8, 2014, the AAA acknowledged receipt of the Demand for Arbitration and notified the parties of the procedures applicable to the arbitration proceedings.

On May 23, 2014, ASCIC sent another letter to McLarens in which it noted that

> this is a subrogation claim that is being brought to recover the $2,000,000 that ASCIC was required to pay [as a result of the Carey Claim]. Excalibur is not asserting claims against ASCIC, nor is it asserting any claims against McLarens that differ in any respect from the single claim that ASCIC and Excalibur are jointly asserting in the arbitration[.]"

The letter further advised that, although neither felt it necessary, ASCIC and Excalibur were "willing to enter into an agreement whereby ASCIC assigns its rights against McLarens to Excalibur as respects the Carey Claim."

---

[1] The arbitration demand was actually received by the American Arbitration Association on April 29, 2014.

4

Five days later, McLarens filed a Motion to Stay Arbitration in the Superior Court of Fulton County based on its contention that appellees' jointly-filed arbitration demand was outside the scope of the Arbitration Provision of the CHA since it did not concern "matters in dispute 'solely' between" ASCIC and McLarens in relation to the CHA. On June 17, 2014, ASCIC assigned to Excalibur the right to pursue arbitration or engage in other legal proceedings against McLarens related to the "Carey Action" ("Assignment"). McLarens refused to recognize the assignment and reasserted its position that it was not required to arbitrate with Excalibur. Appellees then filed a cross-motion to compel arbitration and a brief in response to the motion to stay. McLarens filed a brief in opposition to appellees' cross-motion to compel arbitration, reasserting that the jointly filed demand for arbitration was ineffective because appellees sought to arbitrate matters outside the scope of the Arbitration Provision of the CHA.

Following a hearing, the trial court entered an order denying McLarens' motion to stay arbitration and granting appellees' cross-motion to compel arbitration based on a finding that the assignment of the "McLarens Claims" to Excalibur was valid

5

and enforceable and, therefore, Excalibur could proceed as the sole claimant.[2]

McLarens appeals.

1. We first address McLarens' argument that the appellees' jointly filed arbitration demand did not concern a matter in dispute "solely between" McLarens and ASCIC and thus was outside the scope of the Arbitration Provision.

> Arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement. . . . Thus, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. The question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination. Thus, we review the trial court's order de novo, applying the ordinary rules of contract construction.

(Citations and punctuation omitted.) *Brooks Peanut Co. v. Great Southern Peanut, LLC.*, 322 Ga. App. 801, 809 (3) (746 SE2d 272) (2013).

Although McLarens argues to the contrary, it appears that the only dispute in this case is whether McLarens is required to indemnify ASCIC for its "liability, loss,

---

[2] The trial court granted McLarens' motion for a temporary restraining order and/or preliminary injunction to toll any pending deadlines relating to the arbitration proceedings until 30 days after the time for filing an appeal had passed or a final appellate ruling on the denial of the motion to stay/grant of the motion to compel arbitration has been issued.

damage and expense" under the indemnification provision of the CHA[3] to the extent those liabilities arose from or were caused by McLarens' alleged negligent handling of the Carey Claim. Thus, there seems to be little, if any, question that McLarens would have no grounds upon which to stay the arbitration if the demand had been filed only by ASCIC.

The question then is whether the insertion of Excalibur into the arbitration proceedings changed the nature of proceedings so that the dispute was no longer between McLarens and ASCIC. Under the circumstances here, we do not believe that is the case. There is no matter in dispute between Excalibur and McLarens; rather, the dispute pertains solely to whether McLarens is required to indemnify ASCIC under the terms of the CHA, and there is no greater or lesser right to indemnification because Excalibur has been inserted into the proceedings. Pursuant to the terms of its Reinsurance Agreement with ASCIC,[4] Excalibur is merely subrogated to any right to

_____

[3] Pursuant to Article 13.1: "Each party agrees to indemnify, defend and hold harmless the other parties, . . . from and against any and all liability, loss, damage or expense . . . to the extent arising from or caused by any wrongful act or omission, of the other party and/or its officers, agents or employees."

[4] Under the subrogation clause of the Reinsurance Agreement, "[ASCIC] will credit [Excalibur] with any reimbursement obtained or recovery made by [ASCIC], less the actual cost . . . of obtaining such reimbursement or making such recovery, on account of claims and settlements involving reinsurance hereunder. [ASCIC] agrees

7

indemnification that ASCIC may have against McLarens under the CHA due to the negligent handling of the Carey Claim to the extent of the payment Excalibur made to ASCIC under the terms of the Reinsurance Agreement. And, as the subrogee of ASCIC, Excalibur "stands in its shoes" and can pursue any cause of action that has been assigned to it. *Ga. Cas. & Surety Co. v. Woodcraft by MacDonald, Inc.*, 315 Ga. App. 331, 336 (1) (726 SE2d 793) (2012); *Landrum v. State Farm Mut. Auto. Ins. Co.*, 241 Ga. App. 787, 788 (527 SE2d 637) (2000). Accordingly, Excalibur is entitled to "stand in [the] shoes" of ASCIC in the arbitration proceedings concerning the Carey Claim.

2. Alternatively, Excalibur acquired the right to participate in the arbitration proceedings under the terms of the Assignment. McLarens argues, however, that the Assignment is invalid and unenforceable because it violates the anti-assignment provisions of the CHA.

The CHA contains two anti-assignment clauses: Article 16.1, which provides "[t]his Agreement may not be assigned by any party without the prior written consent of the other parties," and Article 17.3, which provides that neither party "may . . .

_____

to enforce its rights to subrogation relating to any loss, a part of which loss was sustained by [Excalibur], and to prosecute all claims arising out of such rights."

8

assign . . . any of [their] rights, obligations or interests under this Agreement without the prior written consent of the parties." But, under Georgia statutory and case law, unless a contract falls into one of the exceptions more fully discussed below, "once a party to the contract performs its obligations thereunder so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent even if the contract contains a non-assignment clause." *Mail Concepts, Inc. v. Foote & Davies, Inc.*, 200 Ga. App. 778, 781 (3) (409 SE2d 567) (1991). This principle has been codified in OCGA §§ 44-12-22 and 44-12-24, which have been read to provide that "the assignment of a chose in action arising out of contract . . . [is] within the public policy of Georgia, prohibiting only the assignment of a right of action for personal torts or for injuries arising from fraud." *Villanueva v. First American Title Ins. Co.*, 292 Ga. 630, 632 (740 SE2d 108) (2013). See OCGA § 44-12-22 ("[e]xcept as may be otherwise provided in Title 11, all choses in action arising upon contract may be assigned so as to vest the title in the assignee"); *Singer Asset Finance Co. LLC v. CGU Life Ins. Co.*, 275 Ga. 328, 329 (567 SE2d 9) (2002) ("contracts are generally assignable in this state even when they contain a non-assignment clause").

9

Georgia law is consistent with the Restatement (Second) of Contracts, which provides that "[u]nless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' [such as that contained in Article 16.1 of the CHA] bars only the delegation to an assignee of the performance by the assignor of a duty or condition." Restatement (Second) of Contracts § 322 (1) (1981). And unless a different intention is shown, "[a] contract term prohibiting assignment of rights under the contract [such as contained in Article 17.3 of the CHA] does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation[.]" Restatement (Second) of Contracts § 322 (2) (a) (1981).

Applying these principles, we look first then to whether the contract had been performed or executed at the time of the assignment. Pursuant to OCGA § 13-1-2 (a) & (b), "[a]n executed contract is one in which all the parties thereto have performed all the obligations which they have originally assumed" while "[a]n executory contract is one in which something remains to be done by one or more parties."[5]

---

[5] We note that this Court's opinion in *Mingledorff's, Inc. v. Hicks*, 133 Ga. App. 27 (209 SE2d 661) (1974) seems to offer an incomplete, or possibly erroneous, definition of executory as the terms executory and executed appear to be mutually exclusive. However, as noted in *Mail Concepts,* 200 Ga. App. at 781 (3), the Court in *Mingledorff* appears to indicate that the agreement at issue remained at least in part

10

Article III of the CHA sets out McLarens' performance obligations under the agreement, which, as detailed in the CHA, relate to the provision of "claim management and adjustment services for [ASCIC] in connection with claims or losses relating to [certain specified] policies of insurance" in return for which ASCIC would pay an agreed-upon fee. At the time ASCIC assigned the Carey Claim to Excalibur in June 17, 2014, all open files had been transferred back to ASCIC, and all claim management and adjustment services had been performed and the agreed-upon fees had been paid. Accordingly, no claims handling services remained to be performed at the time of the assignment.[6]

---

executory.

[6] McLarens argues that, in fact, the CHA remained in full force and effect at the time of the Assignment because the parties had not terminated the CHA in accordance with Article XV, which requires written notice of termination. However, McLarens did not raise this argument below, and appellees stated at oral argument that they had no opportunity to present evidence that would have shown that the CHA had been effectively terminated for other reasons. Accordingly, "[w]e will not consider [McLarens'] additional argument . . . that [was] neither raised nor ruled upon the court below, given that we do not apply a 'wrong for any reason' rule in evaluating an order on appeal." *Gwinnett County v. Old Peachtree Partners, LLC.*, 329 Ga. App. 540, 549 (1) (d) (764 SE2d 193) (2014). See *Nebo Ventures, LLC v. Novapro Risk Solutions, L. P.*, 324 Ga. App. 836, 848 (4) (752 SE2d 18) (2013) ("we do not think an appellate court properly ought to consider whether the trial court was 'wrong for any reason'") (citation and punctuation omitted).

11

McLarens argues, however, that the CHA had not been fully executed at the time of the assignment because the mutual obligation to indemnify and arbitrate remained to be performed. But we do not believe that these obligations render the contract executory when all *performance obligations* have been fulfilled by the parties and the only matter remaining for determination is whether one party must indemnify the other because of an alleged breach of the contract. See *Decatur North Assoc. & Builders Glass*, 180 Ga. App. 862, 865-66 (2) (350 SE2d 695) (1986) (contract assignable when only contractual liability remaining was for express warranty of completed work); see also *Missouri Bank & Trust Co. v. Gas-Mart Dev. Co., Inc.,* 130 P3d 128 (Kan. App. 2006) (assignment of arbitration claims for payments due under the completed contract not prohibited by non-assignment provision in the contract).

McLarens further argues that the CHA was "inherently not assignable" because it is a contract for services and because the Assignment "materially affect[s] the value" of the agreement. Although it is true there is a limited class of cases in Georgia that cannot be assigned, even if the contract has been fully executed and even if the

12

contract does not contain a provision precluding assignment,[7] the record shows that McLarens did not raise this argument below. Moreover, although McLarens argues in its reply brief that the argument was encompassed within its general argument vigorously challenging the assignability of the CHA and thus it should be permitted to raise this specific argument for the first time on appeal, see *Marvel Enterprises, Inc. v. World Wrestling Federation Entertainment, Inc.*, 271 Ga. App. 607, 610 (1) (610 SE2d 583) (2005), we do not believe this Court should make these initial determinations concerning whether the CHA involved *personalized services* or whether the Assignment would result in a material reduction in value of the CHA

---

[7] See *Decatur North Assoc.*, 180 Ga. App. at 865 (2) (certain classes of contracts are inherently non-assignable in their character, such as promises to marry, or engagements for *personal services*, requiring skill, science, or peculiar obligations) (emphasis in original); Restatement (Second) Contracts, § 317 (2) (a) (1981) (contracts should not be assigned when "the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him"). For example, in *Singer Asset Finance v. CGU Life Insurance Company*, 275 Ga. 328 (567 SE2d 9) (2002), our Supreme Court upheld the non-assignment clause in a fully executed structured settlement agreement because, under the facts of that case, the assignment of future payments would result in a material reduction in value of the contract. Id. at 329. See also *Schoenbaum Ltd. Co, LLC v. Lenox Pines, LLC*, 262 Ga. App. 457, 464-65 (4) (585 SE2d 643) (2003) (applying *Singer* to hold contract not assignable whether executory or not if that transfer would materially reduce the value of the contract to the non-assigning party).

13

without the appellees having an opportunity to present evidence or argument on these issues in the court below, and without the trial court having an opportunity to rule on these issues. Accordingly, we decline to consider McLarens' argument because it was not raised below.[8]

3. In light of our holdings above, we need not address McLarens' remaining arguments.

*Judgment affirmed. Barnes, P. J., concurs. Ray, J., concurs fully in Division 1 and concurs in judgment only as to Division 2.*

---

[8] See *supra* note 6.